ORIGINAL

Approved: _____
Cecilia E. Vogel
Assistant United States Attorney

Before:   HONORABLE KATHARINE H. PARKER
          United States Magistrate Judge
          Southern District of New York

19MAG3077

- - - - - - - - - - - - - - - - - - x
                                    :
UNITED STATES OF AMERICA            :     **COMPLAINT**
                                    :
          - v. -                    :     Violations of
                                    :     18 U.S.C §§ 1951 and 2;
JOSE REYES, OTONIEL ROSARIO         :     and 21 U.S.C. § 846
BURGOS, and UILLIS ROSARIO          :
ACOSTA,                             :
                                    :
               Defendants.          :
                                    :
- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOSEPH KING, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA") and charges as follows:

COUNT ONE
(Hobbs Act Robbery)

1.   On or about March 27, 2019, in the Southern District of New York and elsewhere, JOSE REYES, OTONIEL ROSARIO BURGOS, and UILLIS ROSARIO ACOSTA, the defendants, unlawfully and knowingly did commit, and attempt to commit, robbery as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did, thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3) and attempted to do the same, to wit, REYES, BURGOS, and ACOSTA attempted to rob an individual they believed was a narcotics dealer in the Bronx, New York.

(Title 18, United States Code, Sections 1951 and 2.)

COUNT TWO
(Conspiracy to Commit Hobbs Act Robbery)

2. From at least on or about March 5, 2019, up to and including at least on or about March 27, 2019, in the Southern District of New York and elsewhere, JOSE REYES, OTONIEL ROSARIO BURGOS, and UILLIS ROSARIO ACOSTA, the defendants, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with others to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, REYES, BURGOS, and ACOSTA, agreed to rob an individual they believed was a narcotics dealer in Bronx, New York.

(Title 18, United States Code, Section 1951.)

COUNT THREE
(Conspiracy to Possess with Intent to Distribute Narcotics)

3. From at least on or about March 5, 2019, up to and including at least on or about March 27, 2019, in the Southern District of New York and elsewhere, JOSE REYES, OTONIEL ROSARIO BURGOS, and UILLIS ROSARIO ACOSTA, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

4. It was a part and an object of the conspiracy that JOSE REYES, OTONIEL ROSARIO BURGOS, and UILLIS ROSARIO ACOSTA, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

5. The controlled substances that JOSE REYES, OTONIEL ROSARIO BURGOS, and UILLIS ROSARIO ACOSTA, the defendants, conspired to distribute and possess with intent to distribute were (i) one kilogram and more of mixtures and substances containing a detectable amount of heroin in violation of Title 21, United States Code, Section 841(b)(1)(A); and (ii) five kilograms and more of mixtures, and substances containing a detectable amount of cocaine in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

6. I am a Task Force Officer with the DEA and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, and my conversations with law enforcement agents and witnesses as well as a review of documents and recordings. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

*Preparing for the Attempted Robbery*

7. Based on my review of documents, my conversations with law enforcement officers, my conversations with witnesses, my review of recorded conversations, as well as my own personal involvement in this investigation, I have learned, in part and in substance, that:

a. On or about March 5, 2019, a confidential source working with the DEA ("CS-1")[1] communicated with UILLIS

---

[1] Based on my review of reports and conversations with law enforcement officers, I have learned that CS-1 has been working for the DEA since approximately 2001 as a paid informant. CS-1 was charged with narcotics offenses in approximately 2000 and cooperated with law enforcement in order to obtain leniency at sentencing. In addition, approximately eight years ago, CS-1 obtained a Significant Public Benefit Parole visa for his work assisting the DEA. In addition, CS-1's information has been

3

ROSARIO ACOSTA, the defendant, on the phone. Over the course of several conversations, ACOSTA told CS-1, in sum and substance, that he has prior experience robbing narcotics dealers. At the direction of law enforcement, CS-1 suggested that they rob a location used by a narcotics dealer to store narcotics, and ACOSTA, in sum and substance, stated that he was interested in doing the robbery and that he had a team he had worked with to commit robberies.

    b. CS-1 and ACOSTA continued to communicate by phone. During those conversations, which were recorded, ACOSTA stated, in sum and substance, that he had a team of four male individuals who had all the "tools" necessary to do the robbery, that they have been committing robberies since 2008, and that they were willing and ready to work with CS-1 to commit the robbery.

    c. On or about March 11, 2019, CS-1 and another DEA confidential source ("CS-2")[2] met ACOSTA and JOSE REYES, the defendant, at a Burger King parking lot in the Bronx, New York ("Lot-1"). ACOSTA and REYES met with CS-1 and CS-2 in CS-2's vehicle. This meeting was recorded, and I have spoken with another DEA Special Agent ("Agent-1") who reviewed the recording. During the meeting, ACOSTA informed CS-1 and CS-2, in sum and substance, that they were ready to do the robbery, they do this for a living, they had all the necessary "tools" for the robbery, and their team consisted of four people using two cars. REYES, in sum and substance, confirmed what ACOSTA had said. ACOSTA stated, in sum and substance, that they would use police uniforms to conduct the robbery and showed CS-1 and CS-2 photos depicting images of what appeared to be police uniforms. CS-1 and CS-2 also informed ACOSTA and REYES, in sum and substance, that the narcotics dealer they would be robbing had 33 kilograms of cocaine and seven kilograms of heroin in the location they would be robbing. ACOSTA and REYES exited CS-2's vehicle and entered a white Dodge Ram ("Vehicle-1"), which law enforcement followed to a residence in Haverstraw, New

---

corroborated by other means, including by law enforcement officers' observations.

[2] Based on my review of reports and conversations with law enforcement officers, I have learned that CS-2 is a paid informant for the DEA. CS-2 has also received immigration benefits for his cooperation with law enforcement, specifically deferred action. In addition, CS-2's information has been corroborated by other means, including by law enforcement officers' observations.

4

York ("Residence-1"). ACOSTA and REYES then parked Vehicle-1 and entered Residence-1.

        d. On or about March 15, 2019, CS-1 and CS-2 met ACOSTA in Lot-1. ACOSTA arrived at Lot-1 in a blue Camry ("Vehicle-2") driven by REYES. ACOSTA met with CS-1 and CS-2 in CS-2's vehicle, which meeting was recorded. Based on my conversations with Agent-1, who reviewed the recording, I know that during the meeting, ACOSTA asked CS-1, in sum and substance, when the robbery was going to happen. He also stated, in sum and substance, that it was not good that CS-1 and CS-2 kept changing the date for the robbery. CS-1 previously told ACOSTA on a recorded phone conversation that robbery was going to be delayed.

        e. On or about March 19, 2019, ACOSTA met with CS-1 and CS-2 in the Bronx, New York. ACOSTA arrived at the meeting in Vehicle-2, which was driven by another individual. During the meeting, which was recorded, ACOSTA again questioned CS-1 and CS-2 about why the robbery was being delayed. CS-1 stated, in sum and substance, that the robbery would definitely happen the following week, and CS-1 asked ACOSTA whether he still wanted to go forward with the robbery. ACOSTA confirmed that he did. ACOSTA left the area in Vehicle-2.

        f. On or about March 26, 2019, ACOSTA and OTONIEL ROSARIO BURGOS, the defendant, met with CS-1 and CS-2 in the Bronx, New York. During the meeting, which was recorded, ACOSTA and BURGOS confirmed that they would participate in the robbery the following day. ACOSTA and BURGOS asked, in sum and substance, what time they should meet CS-1 and CS-2 and where the robbery would take place. ACOSTA and BURGOS said that their team would have four members, including themselves, and that, before committing the robbery, they would check the surrounding area for the presence of law enforcement.

### The Robbery Attempt and Arrests

8. Based on my participation in this investigation, my conversations with law enforcement officers, my review of recorded conversations, and my participation in surveillance of the events described below, I have learned that the following occurred on March 27, 2019, in sum and substance, among other things:

        a. At approximately 12:00 p.m., law enforcement officers observed UILLIS ROSARIO ACOSTA, the defendant, leaving a residence in Newark, New Jersey with a white plastic bag ("Bag-

5

1"). ACOSTA then entered with Vehicle-1, carrying Bag-1, and drove to the vicinity of 2155 Grand Avenue ("Building-1").

        b.    At approximately 1:00 p.m., law enforcement officers observed OTONIEL ROSARIO BURGOS, the defendant, leave Residence-1 and drive away in Vehicle-2. BURGOS stopped at a sporting goods store in Haverstraw, New York, where he purchased a black bullet proof vest holder. The purchase was recorded on store video surveillance. BURGOS later parked Vehicle-2 in the vicinity of Building-1.

        c.    At approximately 6:51 p.m., CS-1 called ACOSTA and instructed him, in sum and substance, to meet in the vicinity of Randall Avenue and Castle Hill Avenue in the Bronx, New York (the "Meet Location").

        d.    Several minutes later, ACOSTA, BURGOS, and JOSE REYES, the defendant, exited Building-1 and entered Vehicle-2. Law enforcement officers observed two other individuals ("CC-1" and "CC-2") leave Building-1. CC-2 was holding Bag-1. CC-1 and CC-2 then entered a black Camry ("Vehicle-3"). Vehicle-2 followed Vehicle-3 to the vicinity of the Meet Location. Vehicle-3 parked on the corner of Randall Avenue and Castle Hill Avenue. Vehicle-2 drove around the block and parked nearby.

        e.    ACOSTA, BURGOS, and REYES exited Vehicle-2 and entered CS-2's vehicle with CS-1 and CS-2. During this meeting, which was recorded, REYES asked, in sum and substance, for the specific address of the residence they would be robbing (the "Robbery Residence"), and stated, in sum and substance, that they needed to check the area of the robbery to ensure the area was clear of law enforcement. BURGOS, in sum and substance, stated that they could not go to a location if they did not know the address. ACOSTA confirmed, in sum and substance, that they needed to visit the Robbery Residence to check the location, and he told CS-2 that CS-2 should call his wife and tell her that they would arrive at the Robbery Residence in approximately twenty minutes. ACOSTA had previously discussed with CS-2 and CS-1 that CS-2's wife would leave open the door of the Robbery Residence so they could enter. ACOSTA also stated, in sum and substance, that they were going to the vehicle to get dressed, which I understand to mean, based on my participation in this investigation, that they would put on police officer uniforms. ACOSTA, BURGOS, and REYES and later CS-2 exited CS-2's vehicle, and CS-2 entered Vehicle-2 with ACOSTA, BURGOS, and REYES.

     f. While in Vehicle-2, REYES stated, in sum and substance, that no one wanted to "get locked up" and that they would not commit a robbery without knowing the area and the address. BURGOS asked CS-2, in sum and substance, for the address of the Robbery Residence. CS-2 then provided the defendants with directions to the Robbery Residence. ACOSTA, BURGOS, REYES, and CS-2 then began to drive Vehicle-2 toward the Robbery Residence. CC-1 and CC-2, driving Vehicle-3, began driving in the direction of Vehicle-2, which was driving to the vicinity of the Robbery Residence.

     g. As Vehicle-2 approached the Robbery Residence, ACOSTA, stated, in sum and substance, that he had spotted police. Law enforcement then stopped Vehicle-2 and arrested ACOSTA, BURGOS, and REYES. While conducting an inventory of Vehicle-2, law enforcement recovered from Vehicle-2, black gloves, black cargo police-style pants, a black knapsack, a black baseball hat, a black bullet proof vest holder, and a plastic bag containing a black sweatshirt, a black t-shirt, and matching black gloves. BURGOS was dressed all in black.

     h. At approximately the same time, law enforcement officers stopped Vehicle-3. Law enforcement recovered from Vehicle-3 Bag-1, which contained four police badges, three black hats that stated "police," a ski mask, and a black bullet proof vest holder with a Velcro sign that stated "police."

 WHEREFORE, deponent respectfully requests that JOSE REYES, OTONIEL ROSARIO BURGOS, and UILLIS ROSARIO ACOSTA, the defendants, be imprisoned or bailed, as the case may be.

               _____
                Joseph King
                Task Force Officer
                Drug Enforcement Administration

Sworn to before me this
28th day of March, 2019

_____
THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK